HEARD, Judge.
Mrs. Nonie Osteen filed this action against Mrs. Vivian Purdue and her home liability insurer, Home Owners Insurance Company, for damages resulting from personal injuries sustained by her. Defendants answered with a general denial and alleged Mrs. Osteen’s contributory negligence. Home Owners Insurance Company further answered that it was presently under liquidation and receivership and incapable of standing in judgment. Coverage under the policy was stipulated at trial. Judgment was rendered in favor of defendants rejecting plaintiff’s demands, and this appeal followed.
On September 13, 1970, Mrs. Osteen was visiting Ken Johnson at his trailer home on Lake Bistineau adjacent to defendant’s home. Plaintiff contends there was a standing invitation from Mrs. Purdue to visit her and that late that afternoon, about dusk, she walked over for such a visit. Upon reaching defendant’s door, Mrs. Osteen asked for help because she had cut her foot severely.
While it is uncontradicted that Mrs. Osteen suffered a severe injury, how and upon what she cut her foot are the basic issues before us. In order for her to recover, the trial judge’s opinion stated it would be necessary for the court to accept her uncorroborated testimony that she cut her foot on a metal pipe gate stop, about the diameter of a quarter, set in the center of Mrs. Purdue’s concrete driveway and protruding out of it an inch to an inch and a half; that despite her several trips down this driveway, she had never seen the pipe and did not see it the day of the accident; that the pipe was a dangerous condition and that Mrs. Purdue knew or should have known of its existence, failed to correct it and failed to warn the invitee plaintiff. We are of the opinion, as was the trial court, that she failed to meet her burden of proving her case by a reasonable pre *504 ponderance of the evidence for several reasons.
Mrs. Osteen was the only person who saw or testified as to how or where the accident occurred. Her testimony and written allegations are highly contradictory and in conflict with the testimony of other witnesses. Mrs. Osteen’s petition alleged she cut her foot on an unseen and unknown protruding piece of rusty culvert. In her deposition taken October 7, 1971, she testified, first, she stepped into a hole and later that she stepped on a drainage culvert. In describing the culvert she indicated with her hands it measured some 12-18 inches in diameter. At trial, plaintiff steadfastly called the gate stop pipe a culvert. The only culvert in the vicinity is located outside the Purdue fence in the ditch along the public road in front of the Purdue and Johnson lots. Dr. Gary Daniel, who treated her in the emergency room, was told she stepped on a pipe; while Dr. J. C. Sanders testified it was some tile, and defendant testified it was some glass.
In addition to the question of the instrumentality itself, plaintiff’s versions of the surrounding circumstances are repeatedly contradictory and in conflict with other witnesses. In her deposition, Mrs. Osteen stated that when she suffered the injury, she was wearing “little teeny flats” that one buys in a plastic package, while at trial, she stated she was wearing moccasins. Three witnesses, however, defendant, Johnson and Stephenson, who was visiting Johnson, all testified she was barefooted at all times while she was working in the Johnson yard in the afternoon and when she appeared at defendant’s door. Plaintiff denied being barefoot but was unable to produce the moccasins, stating she must have left them in Stephenson’s car in which she was taken to the hospital. Other conflicting statements involved whether defendant’s mercury vapor light was operative (plaintiff claimed it was not; defendant and Johnson testified it was), and whether Mrs. Osteen was using a hoe that same day in the yard (denied by her, but testified to by Mrs. Purdue, Johnson, and Stephenson).
The trial judge heard the evidence and saw the demeanor of the witnesses as they testified. He correctly chose to disregard plaintiff’s testimony and we will not disturb his findings.
Even if Mrs. Osteen’s testimony as to the gate stop was uncontradicted, the trial judge again correctly concluded from the photographs of it in evidence that there were no sharp edges or jagged projections which could cause the severe deep laceration testified to by Dr. Sanders, nor did plaintiff point out anything on these photographs which could cause such an injury.
Proof by a preponderance of the evidence means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105 (1971). It cannot be said in the instant case that Mrs. Osteen has met this test in proving the cause of her injury.
Therefore, the judgment of the trial court is affirmed at appellant’s cost.