336 So.2d 954 (1976)
MOTORS INSURANCE CORPORATION et al., Plaintiffs and Appellants,
v.
Eugene W. MELDER et al., Defendants and Appellees.
No. 5572.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1976.
Bruscato & Loomis by Albert E. Loomis, III, and Percy A. Ford, Jr., Monroe, for plaintiffs and appellants.
Vincent Hazelton, Alexandria, for defendant and appellant.
George & George by Robert D. Hoover, Baton Rouge, for intervenor and appellant.
Teekell & Chaudoir by Lloyd G. Teekell, Stafford, Randow, O'Neal & Scott by Hodge O'Neal, III, Alexandria, for defendants and appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
This is a companion case to Dixon, d/b/a Dixon Trucking Company v. Melder, et al., 336 So.2d 958 and Dietzel v. Melder, 336 So.2d 958, in which separate decisions are being rendered by us this date. These three cases, which were consolidated for the trial and appeal, are for damages sustained when a tractor-trailer rig collided with several cows on a highway. The plaintiffs in the present suit are Motors Insurance Corporation and Adam J. Dixon, who are respectively the subrogated collision insurer and the owner of the tractor-trailer rig which was damaged. Adam J. Dixon also filed the second suit, seeking damages for loss of use of his truck. The plaintiff in the third suit is Lester Dietzel, driver of the truck, who seeks damages for personal injuries. There was an intervention by Rollins International, Inc., seeking reimbursement for medical expenses and workmen's compensation benefits paid to Dietzel. The defendants in all three cases are the alleged owners of the cattle. The trial judge found the evidence insufficient to prove that defendants owned the cattle involved in the collision. From judgments in each case dismissing their suits, all plaintiffs and the intervenor have appealed.
The decisive issue is whether the evidence reasonably supports the finding of fact by the trial judge that defendants did not own the cattle.
The general facts are undisputed. On July 17, 1976, at 12:45 a.m., plaintiff, Lester Dietzel, was driving south on U.S. *955 Highway 165 between Alexandria and Forest Hill, Louisiana in a Mack tractor-trailer rig owned by his employer, plaintiff, Adam J. Dixon. The rig's tank-type trailer was loaded with highly explosive nitromethane. The posted speed limit on the two-lane highway was 50 miles per hour. That portion of the highway where the accident occurred is one of the roads listed in LSA-R.S. 3:2803 upon which owners of livestock cannot knowingly, willfully, or negligently permit their livestock to go at large.
Dietzel testified that he was driving at a rate of about 45 miles per hour with his low-beam lights on as he approached the bottom of a gently sloping hill. Suddenly, he was confronted by an indeterminate number of cows standing in his lane of the highway about 40 feet in front of him. Dietzel applied the brakes and swerved left into the north bound lane of the highway to avoid the cows. While in the north bound lane, Dietzel encountered another cow standing near the center line. The rig then collided with several cattle and went out of control, traveling back across the south bound lane and onto the shoulder of the road. The tractor's wheels struck a concrete culvert on the shoulder, which caused the rig to tip over and finally come to rest on the shoulder of the highway.
As a result of the accident, the tractortrailer rig sustained $14,950.16 in damages, Dietzel, the driver, sustained personal injuries, and four cows were killed. A Louisiana Highway Department crew deposited the dead cows in a nearby dump.
Plaintiffs-appellants Dixon, Dietzel and Motors Insurance Corporation, and Intervenor-appellant Rollins International, Inc., concede in their joint brief that there is no direct evidence to support their contention that the subject cattle were owned by defendants. Our review of the record confirms this concession. There were no admissions of ownership of the cattle. Eight of the nine witnesses who were questioned as to whether the dead cows were branded said that they saw no brands. Louis Powell, a member of the Louisiana Highway Department crew which removed the dead cows from the accident scene, testified that one of the cattle was branded on its hip, but he could not remember the configuration of the brand. All cattle owned by the Melders at the time of the accident were branded.
Plaintiffs resorted to indirect or circumstantial evidence in their attempt to prove that defendants owned the subject cattle. A summary of this circumstantial evidence follows.
Admittedly, two contiguous tracts of land on either side of Highway 165 at the site of the accident were owned by defendants. The southernmost of the two tracts was owned in indivision by defendants Parks W. Sansing, Alice S. Chrisp and Neonah Sansing (The Sansing defendants). The other tract was owned by defendant E. W. Melder. Both tracts were enclosed by a barbed wire fence.
The Sansing defendants owned two cows and a bull which were pastured on the Sansing tract at the time of the accident. These cows were found alive on the Sansing property after the accident. Defendants-appellees Billy Jean Melder and his father, E. W. Melder, owned an indeterminate number of black and brown cows which were pastured on the E. W. Melder tract at the time of the accident.
Examinations of the Sansing and Melder fences on the day of the accident revealed that these fences had been cut at three separate locations. A common fence running perpendicular to the highway between the adjoining properties was cut at a point near the highway right of way. The fence along the highway right of way was also cut, once, on the Sansing segment on the fence and once on the Melder segment. Testimony was in conflict as to the exact location of the cuts in the fence running along the highway but the weight of the evidence indicates the cut in the Sansing fence was about 200 feet north of the resting place of the overturned tractor-trailer, and the cut in the Melder fence was approximately 150 feet north of the Sansing cut.
*956 Several witnesses reported observing fresh cattle tracks leading through the cut in the Sansing segment of the right of way fence. There is some dispute as to whether there were cattle tracks at the other two points where the fences were severed, but a preponderance of the evidence indicates that there were none. Witnesses testified that there were cattle tracks on the highway right of way adjacent to the crash scene. Plaintiff-appellant Dixon testified that cattle tracks led from the cut in the Sansing segment of the fence abutting the highway in a westerly direction across the right of way, continued across the highway at the scene of the accident, and eventually passed under a railroad trestle on the opposite side of the road.
There was no evidence of other cows being lost, stolen, or loose in the area of the crash, nor were there any reports of other nearby fences being down.
Trooper Poole, one of the State Police officers investigating the accident, testified that he saw a live cow wandering around the crash scene about one hour after the accident occurred. At around 9:00 or 10:00 a.m., on the day of the accident, the same or another live black cow bearing the J-9 brand registered to E. W. Melder was seen and photographed as it wandered on the highway right of way at the crash site. Mike Melder, son of defendant Billy Melder, captured this cow at about 11:00 a.m. on the morning of the wreck and returned it to the Melder property.
Conflicting testimony indicated that two of the four dead cows were probably black and the other two some shade of brown. E. W. Melder admitted on cross-examination that he owned both black and red cattle at the time of the accident.
From review of the preceding circumstantial evidence, we must decide whether the trial judge erred in holding that the subject cattle were not owned by defendants. Undisputed testimony shows that the three cows owned by the Sansing defendants were found alive on the Sansing property after the accident. Based upon this testimony, we affirm the lower court's holding that the subject cattle were not owned by the Sansing defendants. We move next to a consideration of the case against the Melders.
Plaintiffs admit that their case against the Melders is built entirely upon circumstantial evidence. We must judge the sufficiency of circumstantial evidence against this standard:
"Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes." Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905, 913 (La.1973); Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395, 397 (1963).
This test allows the trier of fact to weigh other reasonable hypotheses against the one offered by plaintiff to determine whether the evidence as a whole constitutes a preponderance. Our review of the evidence discloses several other reasonable hypotheses, including the following: The cattle involved in the collision could have come from one of the numerous open range areas within walking distance of the accident scene. Cattle owned by Aubrey Henderson, which were pastured on the east side of the highway, directly across from the Melder property, could have gained access to the highway via the railroad trestle or by another route. The cattle could have been owned by any of the several cattlemen pasturing their animals in the neighborhood of the accident. Even if some of the tracks at the accident scene were left by Melder's cattle, it is not unreasonable to infer that the animals left their enclosure and returned before the accident occurred. Plaintiffs' circumstantial evidence fails to exclude these and other reasonable hypotheses with a fair degree of certainty.
Even the presence of the Melder cow at the accident scene can be explained by hypotheses other than the one urged by plaintiffs. The trial judge recognized two such counterhypotheses when he referred in his *957 written reasons to testimony indicating that the cow may have been drawn to the crash scene by the scent of the dead cattle's blood or by a natural curiosity.
Perhaps the most compelling argument for rejecting plaintiffs' inference that the cattle belonged to defendants is the fact that the dead cows were unbranded, while all of the Melder cattle were branded. The trial court stressed the importance of this discrepancy in its written reasons for judgment.
The lower court's determination that defendants did not own the subject cattle is essentially a finding of fact. On review, the appellate court should not disturb this factual finding in the absence of manifest error. Justice Tate explained the manifest error rule in Canter v. Koehring Company, 283 So.2d 716 (La.1973), as follows: "* * the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Our adherence to this rule leads us to the conclusion that the trial judge's determination of ownership of the subject cattle should not be disturbed.
Plaintiffs argue that the fact situation of the instant case is analogous to that of McFatter v. Welch, 205 So.2d 607 (La. App.3rd Cir. 1967), a case where plaintiff's circumstantial evidence was found sufficient to constitute a preponderance. McFatter was a suit by a sheep owner against the owner of the dog which allegedly killed his sheep. The appellate court affirmed the trial judge's inference that defendant's dog, which had been seen in the vicinity of the dead sheep, had killed them. The trial court's rulings on causation in McFatter and on ownership in the instant case are findings of fact which should not be disturbed by appellate courts in the absence of manifest error. This is the underlying principle of both cases. If the trial judge in the instant case had determined that defendants owned the subject cattle, we might well have affirmed his finding on appeal for reasons similar to those stated by the appellate court in McFatter. Under the circumstances, however, we feel that our holding is consistent with the Canter guidelines.
Having determined that defendants did not own the subject cattle, we take up the question of whether plaintiffs have any grounds for recovery of damages. Plaintiffs urge two bases for recovery of damages in this suit. Their first basis is Civil Code Article 2321, which states that owners of animals are answerable for damages caused by them. Their second argument is based on LSA-R.S. 3:2803, the "Stock Law". This provision has been interpreted by the courts to place a heavy burden on the owners of livestock struck on stock law highways to prove that the animals did not escape as the result of their owner's negligence. Obviously, plaintiffs cannot recover damages under either of these two provisions without first proving that defendants owned the cattle involved in the collision. Therefore, our affirmance of the trial court's finding that defendants did not own the cattle effectively bars plaintiffs' recovery.
We reach neither the issue of the alleged negligence of defendants in maintaining their fences nor the issue of whether Dietzel was negligently operating his vehicle at the time of the collision.
For the reasons assigned, the judgment of the district court is affirmed. All costs of this appeal are assessed to appellants.
AFFIRMED